UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel., Anderson, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 2: 24-106-DCR ) |
| V. | ) ) |
| SAINT ELIZABETH MEDICAL CENTER, INC., et al., | ) **MEMORANDUM OPINION** ) **AND ORDER** ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Relator Matt Anderson ("Anderson") brings claims under the False Claims Act ("FCA") and the Kentucky Medicaid Anti-Fraud statute. The matter is pending for consideration of Defendants Saint Elizabeth Medical Center and Summit Medical Group, Inc.'s ("the defendants") motion for judgment on the pleadings. [Record No. 18] The Complaint will be dismissed with prejudice because Anderson's *qui tam* claims are precluded under the FCA's public disclosure bar, and his state law claims are baseless. In addition, attorney Statman will be ordered to show cause regarding why he should not be sanctioned for, *inter alia*, his duplicitous duplication.[1]

As recently as June 16, 2025, Judge Van Tatenhove dismissed similar claims raised by a different plaintiff represented by Statman in a case involving the same defense counsel.

---

[1] Over *half* of attorney Alan Statman's ("Statman") response brief was copy-and-pasted from another case with no citations or credit otherwise accorded. [Compare Record No. 21 with Record No. 25-1 (Brief in *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024))].

Judge Van Tatenhove observed, among other things, that Statman's "response was haphazardly stitched together—with frequent changes in tone, font, and even font size—so that it appears to be the legal version of Frankenstein's monster."[2] But evidently, Statman has not corrected his behavior. Instead, he merely standardized fonts and text sizes in his response in this case without meaningfully improving the brief itself or excising its blatant plagiarism. Rather than returning to the lab, "Dr. Frankenstein" seems to have hastily slapped a bandage on his monster and called it a day.

I.

A.   **Prior *Qui Tam* Suits Initiated Against the Defendants**

Another firm (i.e., "Deters Law") first filed a related FCA case against the defendants in 2017. Although Statman is not a full-time attorney with that firm, Judge Bunning previously determined that he worked with them as a contract attorney.[3] At the very least, Deters Law attorneys and Statman have served as co-counsel on multiple *qui tam* actions initiated against the defendants in this case. And as discussed more fully below, the prior complaints are relevant to both the FCA's public disclosure bar, and potential misconduct by attorney Statman.

1.   **Kidney Dialysis Allegations in *Kent***

On January 11, 2017, Jeff Kent, by and through Stephanie Collins of "Deters Law," filed a *qui tam* complaint that alleged a widespread kidney dialysis fraud and illegal kickback

---

[2]   [*See* Record No. 33-1, p. 3 (*United States ex rel. Elfers v. Allen*, Civil Action No. 2:22-083-GFVT-EBA, 2025 WL 1691628, at *1 (E.D. Ky. June 16, 2025)).]

[3]   *See York v. Saint Elizabeth Med. Ctr., Inc.*, Civil Action No. 21-125-DLB-CJS, 2024 WL 1723073, at *8 (E.D. Ky. Apr. 22, 2024) (noting in addition that a paralegal testified Statman was previously contracted to assist Deters Law on certain cases).

- 2 -

scheme perpetrated by several defendants, including Defendant Saint Elizabeth Medical Center. [*See* Record No. 18-2 (*United States ex rel. Kent v. Saint Elizabeth Med. Ctr., Inc.*, Civil Action No. 2:17-003-DLB-CJS, (E.D. Ky. Jan. 11, 2017).] Defendant Summit Medical Group, Inc., was joined as a defendant on August 2, 2017. *Kent*, Civil Action No. 2:17-003-DLB-CJS, Record No. 18. On November 15, 2017, the administratrix of the relator's estate voluntarily dismissed the case. *Id.*, Record No. 35.

### 2.     COVID-19 Allegations in *Hoskins and Rose*

Next, on October 6, 2021, April Hoskins, through attorney Anthony Romeo of Deters Law, filed a *qui tam* complaint accusing the defendants and other named parties of submitting fraudulent claims to the United States related to over-reported COVID-19 diagnoses and making false and misleading statements in support of their applications for economy injury disaster loans. *United States ex rel. Hoskins v. Saint Elizabeth Med. Ctr., Inc.*, Civil Action No. 2:21-127-DLB-CJS. [4] Notably, relator April Hoskins asserted that she was the original source of the case's allegations. [Record No. 18-3, p. 4] On June 15, 2023, Judge Bunning dismissed the case without prejudice due to insufficient service of process. *Hoskins*, Civil Action No. 2:21-127-DLB-CJS, Record No. 23.

Then, on September 13, 2023, relator Valerie Rose, through attorney Statman, filed a subsequent *qui tam* action against the defendants containing *the exact same* COVID-19 fraud allegations as *Hoskins*. *United States ex rel. Rose v. Saint Elizabeth Med. Ctr., Inc.*, Civil Action No. 2:23-123-DLB-CJS. But even though the allegations remained unchanged, Rose

---

[4]    Attorney Statman entered an appearance on behalf of the relator in the case on October 5, 2022. *Id.*, Record No. 23.

also claimed to be an "original source" of the information. *Id.*; [*see also* Record No. 18-4, p. 5.]. Upon investigating the *Rose* allegations, the United States moved to intervene and dismiss the relator's FCA claim, noting that "continued litigation … [was] unlikely to vindicate the United States' interests and would needlessly expend the Government's and [the] Court's resources." *Id.*, Record No. 29-1, p. 8. Thereafter, Judge Bunning dismissed the FCA claim and the case, concluding that the relator had "abandoned her Kentucky law claims." *Id.*, 2025 WL 836569, at *3 (E.D. Ky. Mar. 17, 2025).

Finally, by and through Statman, Anderson's allegations here also include parallel accusations of "misrepresentations and falsehoods regarding COVID-19" despite his simultaneous claim he is the "original source" of the information.[5] [Record No. 1, pp. 14-16] But in his response to the defendants' motion for judgment on the pleadings, Anderson states he "will address only the allegations related to the fraudulent dialysis diagnoses, referrals and billings and acknowledges that the COVID allegations have been addressed in the now dismissed *Rose* case." [Record No. 21, p. 2 n.2] The defendants contend that this excuse is insufficient. They argue that *Rose's* dismissal has no bearing on Anderson's allegedly frivolous claims here, because "it is undisputed the very same COVID-19 allegations have been asserted against the [d]efendants in three separate *qui tam* cases filed by attorneys associated with Deters Law. This is a quintessential example of vexatious litigation." [Record No. 25, p. 2]

---

[5] Anderson's assertions concerning COVID-19 fraud do not appear within the "Facts" section the Complaint. Instead, COVID-19 is only mentioned later, in the "Qui Tam and Respondent's Violations of the False Claim Act" section, which is directly lifted from the *Hoskins* and *Rose* complaints. [Record No. 1, pp. 14-16]

**B.      Plagiarism**

Statman's plagiarized constitutional arguments were previously copy-and-pasted into briefs in both the *Rose* and the *Elfers* cases. *Compare Rose*, Civil Action No. 2: 23-123-DLB-CJS, Record No. 28, pp. 5-13, *with Elfers*, Civil Action No. 2: 22-083-GFVT-EBA, Record No. 29, pp. 5-13, *and* [Record No. 21, pp. 6-14]. In an ill-disguised attempt to avoid detection, Statman made a few formatting changes to the response brief filed in this matter. But the copy-and-pasting is noticeable even before Anderson's constitutional arguments in the response. Specifically, all three response briefs include an earlier section entitled, "Legal Standard of Motion for Judgment on the Pleadings [sic]." [Record No. 21, p. 3]

Following the "Legal Standard" section are multiple seemingly unending block quotes, which swallow pages whole more efficaciously than a thirsty hippopotamus. [*Id.* at 5-6] Next come the words, lines, and paragraphs Statman shamelessly stole from *Zafirov*. [*Id.* at 6-14] Finally, the response dedicates a measly half-page rebuttal to the defendants' public disclosure arguments (in which Statman scrambles the applicable legal test). [*Id.* at 16-17] The undersigned will address the implications of Statman's conduct in Section V because it is impossible to ignore.

## II.

A couple of intricacies make this case's procedural history unique. First, the defendants challenged the constitutionality of the FCA's *qui tam* provisions based on Justice Clarence Thomas's dissent in *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 442 (2023). [*See* Record No. 18, pp. 7-11.] Thereafter, they properly filed a "notice of constitutional question," which put the government on notice that the FCA itself, in addition to its application to this case, is controverted. [Record No. 19] In response, the United States

intervened to defend the constitutionality of the FCA's *qui tam* provisions, without opining on the merits of Anderson's case specific arguments. [Record No. 29-1]

But counsel for the defendants have confronted attorney Statman before and, significantly, this is Statman's third time contumaciously copy-and paste counterfeiting from a brief in *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024). So in a deft procedural maneuver, the defendants asked the Court to forego consideration of the constitutional challenge they raised in their brief, effectively nullifying the strongest arguments (all plagiarized) advanced by Anderson. And in light of a strong legal basis to do so, the undersigned obliged.[6]

In summary, to Anderson, this action is ostensibly a whistleblower's attempt to expose newfound fraudulent corruption and secure justice for the United States and its taxpayers. But to the defendants, Anderson callously parrots old-news allegations that have now been recycled more times than an eco-friendly tote bag. However, in reviewing the motion for judgment on the pleadings, the Court will accept Anderson's *factual* allegations as true.[7]

### III.

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When reviewing a motion under Rule 12(c), courts "generally may only

---

[6] In accordance with the long-standing canon of constitutional avoidance, the Court decided to forego consideration of the defendants' constitutional arguments because the case is resolvable on other case-specific grounds. [*See* Record No. 31.]

[7] A motion for judgment on the pleadings under Rule 12(c) is evaluated using the same standard that applies to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Oakland Tactical Supply, LLC v. Howell Township*, 103 F.4th 1186, 1191 (6th Cir. 2024) (citing *Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 284 (6th Cir. 2010)). Accordingly, the undersigned accepts Anderson's well-pled *factual* allegations as true.

review the pleadings, any attachments to those pleadings, and documents that are 'referred to in the complaint and [are] central to the plaintiff's claim' or are 'matters of public record.' *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (quoting *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

The defendants advance three primary reasons Count I should be dismissed. They first contend that the False Claims Act is unconstitutional.[8] Next, they allege that Anderson failed to plead his claims with the necessary specificity required under Rule 9(b) of the Federal Rules of Procedure. Finally, the defendants argue Anderson's allegations are precluded by the False Claim Act's public disclosure bar. The undersigned will dismiss Anderson's FCA claim based on the defendants' public disclosure challenge, and Anderson's state law claim will be dismissed because Kentucky's Medicare fraud statute contains no parallel *qui tam* provisions.

## IV.

### A.     Count I: The False Claims Act

Amidst military shortages, defense procurement fraud, and even "[r]eports of the same horses and mules being sold to the United States cavalry three and four times" during the United States Civil War, Congress passed the False Claims Act of 1863.[9] Partially architected by former President Abraham Lincoln, the FCA was designed as an antidote to rampant wartime fraud, providing a novel mechanism to penalize the recurring artifices of the time.

---

[8]     As outlined above, the Court will not address the defendants' constitutional arguments.

[9]     James B. Helmer, Jr. & Robert Clark Neff, Jr., *War Stories: A History of the Qui Tam Provisions of the False Claims Act, the 1986 Amendments to the False Claims Act, and Their Application in the United States Ex Rel. Gravitt v. General Electric Co. Litigation*, 18 Ohio N.U. L. Rev. 35, 35 (1991).

Relevant here are the FCA's *qui tam* provisions—unique features that allow individuals to act as "relators" for the government. "Under the Act, the private citizen bec[omes], in effect, a bounty hunter or private attorney general." *Id.* at 36. And "*[q]ui tam* is short for the Latin phrase *qui tam pro domino rege quam pro si ipso in hac parte sequitur,* which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009) (quoting *Vermont Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 768 n. 1 (2000)). However, knowing that this power could be abused and wreak mayhem for defendants and courts alike, Congress established the public disclosure bar to ward off "'parasitic lawsuits' and 'opportunistic plaintiffs.'" *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 822 (6th Cir. 2021) (quoting *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 521–22 (6th Cir. 2020)). In essence, the defendants contend Anderson's allegations are so parasitic of prior disclosures in the *Kent* case, they might even have Abraham Lincoln rolling in his grave.

### The Public Disclosure Bar

To reiterate, the FCA's public disclosure prohibition "'bars *qui tam* actions that merely feed off prior public disclosures of fraud.'" *Rahimi*, 3 F.4th at 822 (quoting *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020)). Further, in relevant part, the statute's public disclosure bar provides:

> The court shall dismiss an action or claim under the FCA, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
>   (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>   (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>   (iii) from the news media,

unless the ... person bringing the action is an original source of the information. *Id.* (citing 31 U.S.C. § 3730(e)(4)(A) (2010) (citation modified)).

The United States Court of Appeals for the Sixth Circuit has further distilled this prohibition into three primary steps. The Court must first determine "whether, before the filing of the *qui tam* complaint, there had been any public disclosures from which fraud might be inferred." *Rahimi*, 3 F.4th at 823 (citing *Maur*, 981 F.3d at 522). Next, the undersigned "assess[es] how closely related the allegations in the complaint are to those in the public disclosures." *Id.* (citing *Maur*, 981 F.3d at 522). Finally, the Court decides "whether the *qui tam* plaintiff is nevertheless an original source of the information." *Id.* (citing *Maur*, 981 F.3d at 522).

### 1. Public Disclosures

Prior unsealed *qui tam* complaints qualify as "public disclosures" under § 3730(e)(4)(A)(i). *See Poteet*, 552 F.3d 503 ("Public disclosure also includes documents that have been filed with a court, such as discovery documents, and a plaintiff's complaint."); *see also United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 845 (6th Cir. 2020) (finding that cases initiated by agents of the government are public and "the *qui tam* relator is, in all cases, the government's agent under § 3730(e)(4)(A)(i)."). Thus, concluding the three previous FCA cases against the defendants are public disclosures, the Court next considers whether Anderson's Complaint asserts "substantially the same allegations or transactions." § 3730(e)(4)(A).

### 2. Comparing the *Kent* Disclosures with Anderson's Complaint

As noted previously, Anderson concedes his COVID-19 fraud allegations are defunct. That leaves only his fraudulent dialysis claims. "'To decide whether a claim has been publicly

- 9 -

disclosed, courts look at the essential elements of alleged fraud to determine if enough information exists in the public domain to expose the fraudulent transaction.'" *Maur*, 981 F.3d at 523 (quoting *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 (6th Cir. 2017)). "[Q]ui tam actions will be barred only when 'enough information exists in the public domain' to put the government on notice of the fraud alleged." *Holloway*, 960 F.3d at 848 (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005)). That is because ultimately, the entire point of *qui tam* actions is "to prosecute fraud of which the government is unaware." *Id.* (quoting *U.S. ex rel. Dingle v. Bioport Corp.*, 388 F.3d 209, 215 (6th Cir. 2004)).

The *Kent* Complaint principally alleged that the defendants "engaged in a scheme to illegally induce physicians to refer, recommend and otherwise influence their patients to treat [sic] at kidney dialysis centers owned by Kidney and Hypertension Center and Davita for alleged chronic end-stage renal disease, or 'ESRD.'" [Record No. 18-2, p. 3] Following referral, "the patients [we]re often recommended and encouraged to commence and continue with kidney dialysis treatment that is medically unnecessary and unreasonably dangerous." [*Id.*] Essentially, the *Kent* Complaint boils down to assertions that patients were improperly referred for kidney dialysis without their informed consent and the defendants submitted invoices for the unnecessary treatment to the United States Department of Health and Human Services and/or the Commonwealth of Kentucky.

Anderson's Complaint essentially describes the same scheme detailed in the prior allegations, with some minor alterations. He alleges that Defendant Saint Elizabeth Medical Center "submit [sic] invoices for unnecessary and improper kidney dialysis and dialysis-related services to the patient or his/her health care insurer for payment. The amounts charged

for these goods and services are often inflated.  The bills are paid without the knowledge of the charges being unlawful, wrongful, and fraudulent." [Record No. 1 at 6]  Further, he asserts "St. Elizabeth, Davita and Kidney and Hypertension (all three players) and the new nephrologists hired by St. Elizabeth formed a new group." [*Id.* at 7]  In perhaps one of the only genuinely novel additions to the *Kent* allegations, Anderson states that "Dr. Shaughnessy is the head of the Kidney and Hypertension Group … [and he] owns 49% of the Davita clinics in Northern Kentucky and Cincinnati." [*Id.* at 9]  Further, he alleges that "if a patient in these dialysis clinics need[s] a catheter changed or needs angioplasty of the shunt, [Shaughnessy's] group automatically sends those patients to his Vascular Center of which they Own 49% of." [*Id.* at 10]

Although Anderson also mentions the defendants' use of the EPIC electronic medical record system to allegedly control the process, and the defendants' billing commercial insurers in addition to Medicare, the *Kent* allegations "publicly revealed that the same actor[s] had engaged in the same type of fraud alleged." *Maur*, 981 F.3d at 527 (citing *Holloway*, 960 F.3d at 850-851).  And "[a] *qui tam* plaintiff is not allowed to proceed independently if it merely adds details to what is already known in outline." *United States ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 430 (6th Cir. 2016) (quoting *U.S. ex rel. Bogina v. Medline Indus., Inc.,* 809 F.3d 365, 370 (7th Cir. 2016)).

### 3. Original Source of Information

Finally, even if a prior related public disclosure was made, Anderson's claims may survive if he is an "original source" of the allegations he raises.

> [An] "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are

based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

§ 3730(e)(2)(B). Anderson is not an original source of the allegations he presents under either definition.

### (i)     Prior Voluntary Disclosure

Anderson did not disclose any related allegations before the *Kent* case, which precludes him from the statute's first definition of "original source." Further, Anderson appears to conflate the public disclosure bar with the FCA's first to file rule. He argues that "[t]he relator in the *Kent* case moved to voluntarily dismiss the case on November 15, 2017. As stated by Defendants themselves in the *Rose* case, the first-to-file bar is lifted if the first filed *qui tam* case is dismissed." [Record No. 21, p. 16 (internal citation omitted)]

However, the first to file rule prevents subsequent plaintiffs from intervening or bringing related actions after a plaintiff first initiates a *qui tam* action. *See* § 3730(b)(5). That rule is separate from the FCA's public disclosure bar. *Compare id.*, *with* § 3730(e)(4). And Anderson cannot establish he is an "original source" of allegations under the first definition, because he has not "relayed anything to the government 'prior to a public disclosure under subsection (e)(4)([A]).'" *Maur*, 981 F.3d at 527 (citing § 3730(e)(4)(B)(i)).

### (ii)    Voluntary Provided Material Addition to Public Allegations

Whether Anderson's additions to existing disclosures are "material" is a closer question, but the answer is still no. First, the Sixth Circuit has delineated between the FCA's definition of "substantially similar" and the related inquiry regarding whether information constitutes a "material addition" to public disclosures. *See Maur*, 981 F.3d at 525 ("The

question whether a relator's information materially adds to disclosures will often overlap with whether the relator's allegations are substantially the same as those prior revelations. But the materially adds inquiry must remain conceptually distinct; otherwise, the original source exception would be rendered nugatory.") (citation modified). In *Maur*, Judge Larson concluded that for new allegations to be material, "the relator must bring something to the table that would add value for the government." *Id.* (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 759 (10th Cir. 2019)).

The defendants point out that "the Relator has presented no legal authority even suggesting that the passage of time is relevant to the public-disclosure bar." [Record No. 25, p. 11 n.6] Although they are correct concerning Anderson's arguments (or the lack thereof), temporal proximity of allegations *can* be relevant. *See Maur*, 981 F.3d at 525 ("One final point bears mentioning. We agree with Maur and Amicus that engaging in a scheme to defraud cannot immunize a fraudulent action from *qui tam* suits regarding related forms of fraud in perpetuity; what was once a hot trail of fraud must cool at some point.") (citation modified). Thus, the passage of seven years between the *Kent* Complaint and Anderson's allegations here is potentially relevant in determining whether his allegations contain "information of such a nature that knowledge of the item would affect a person's decision-making, is significant, or is "essential." *Advocates for Basic Legal Equal., Inc.*, 816 F.3d at 341.

But even though they are offered seven years after the *Kent* Complaint, Anderson's new allegations do not move the needle. First, the portions of the Complaint that differ from *Kent* lack any specificity or novelty required to show they are essential or significant. He describes essentially the same alleged kickback scheme as the *Kent* Complaint, with additions regarding referrals for procedures, use of the EPIC electronic medical record system, and

vague mention of new nameless "insurance company" victims. However, none of the added information changes anything. In *Maur*, the Sixth Circuit held that even though the relator provided "nine additional patient examples," they were not novel because the general scheme had already been revealed to the government. Here, Anderson offers no specifics, no patients, and, other than the mysterious "Dr. Shaughnessy," no new actors.

Further, Anderson's argument that the lapse in time between *Kent* and this case strengthens the materiality of his "new" disclosures fails, because attorney Statman and Deters law have repeatedly thrust the defendants into the government's investigative white-hot headlights. At this point, St. Elizabeth Medical Center has been sued under the FCA so many times, it might be the absolute worst place to commit a criminal kickback or fraud scheme. Attorney Statman and Deters Law have set the defendants and their counsel on an unending game of *qui tam* whack-a-mole that should have ended at least two "moles" ago. This is especially salient in light of the government's extensive investigation in *Rose*. Although the allegations were not exactly the same, a significant portion of the *Rose* complaint concerned Defendant Saint Elizabeth Medical Center's 'inflated' claim billing practices, a touchstone issue here.

Further, the government filed a notice of non-intervention in the case. [*See* Record No. 7.] Although this decision is not dispositive, at the minimum, it demonstrates that the government was not interested in prosecuting the case. And the government also declined to intervene in *Kent*, where the allegations overlapped significantly. Anderson cannot show the information he provides is material.

Finally, Anderson does not allege that the government was notified of his allegations before the suit, and the government indicates it was never served the Complaint. [*See* Record

- 14 -

No. 7, p. 1 ("The United States has not been served with Relator Matt Anderson[']s Complaint.").] While Anderson allegedly served the government with the "prelitigation statement," there is no indication the United States was *ever* served the Complaint in this case, thus he never "voluntarily provided the information to the Government before filing [the] action." § 3730(e)(2)(B). Accordingly, the Complaint cannot survive the public disclosure bar.

  **B.**  **Count II: Medicaid Fraud under KRS § 205.8463**

Count II fails as a matter of law because Anderson does not state a cognizable legal claim. The Complaint characterizes KRS § 205.8463 as the "Kentucky Medicare False Claims Statute." [Record No. 1, p. 17] However, the defendants point out that "the statute is actually referred to as the 'Medicaid [Anti-]Fraud' statute, because it criminalizes activities like presenting false claims to the Kentucky Cabinet for Health and Family Services, which administers the Medicaid program." [Record No. 18-1, p. 21] Misnomer aside, Anderson attempts to employ KRS § 205.8463 in conjunction with KRS § 446.070, (the Commonwealth's 'negligence *per se*' statute) to ostensibly create a state law *qui tam* device. But Anderson provides no legal support for his theory and, in any event, the Complaint makes no reference to KRS § 446.070.

The defendants the correctly note that (1) only the only the Attorney General of the Commonwealth may enforce KRS § 205.8463, (2) the Commonwealth of Kentucky does not allow private relators to prosecute claims on its behalf in *qui tam* actions under KRS § 205.8463, and (3) even if Anderson could state a claim under KRS § 446.070, he "cannot (and has not even tried to) establish the elements of KRS § 446.070." [Record No. 25, p. 12]

"As interpreted by Kentucky's highest court, section 446.070 creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected." *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 456 (6th Cir. 2013).  Anderson cannot demonstrate how he could fall within the class of individuals KRS § 205.8463 is intended to protect, nor does he allege he was personally harmed at all by the defendants' actions.  Further, Anderson is misguided to the extent he relies on Judge Bunning's dictum in *Rose*, 2025 WL 836569, at *3.  Whether "it is at least conceivable that a violation of Ky. Rev. Stat. § [2]05.8463 could give rise to a private right of action," Anderson cannot demonstrate he is within the class of individuals the statute aims to protect, or that he suffered any harm from a violation thereof.  *Contra id.*

## V.

"[L]ike Dr. Frankenstein, [Statman's] creation will be [his] downfall." *Elfers*, 2025 WL 1691628, at *1.  Attorney Alan Statman will be directed to show cause regarding why he should not be sanctioned for his conduct outlined above.  He is further directed to specifically address each applicable violation below, and to explain his actions (including the copy-and pasted brief, the public disclosure-barred COVID-19 fraud allegations in the Complaint, and the multiple repeated lawsuits, all claiming to originate from the "original source" of the same information).

### A. 28 United States Code Section 1927:

"[A]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  "Courts may

award sanctions under this section 'when an attorney knows or reasonably should know that a claim pursued is frivolous' and yet continues to litigate it. *King v. Whitmer*, 71 F.4th 511, 530 (6th Cir. 2023) (citing *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012)).

Statman is first directed to explain how the COVID-19 fraud allegations asserted in the Complaint (that he later withdrew) were not frivolous in light of the FCA's public disclosure bar, and to explain why he should not be responsible "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" as a result. 28 U.S.C. § 1927. A failure to understand the mechanics of the public disclosure bar is not an excuse.

### B.      Inherent Authority Sanctions

The Court "may assess attorney's fees under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)). Sanctions are warranted when "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,* 125 F.3d 308, 313 (6th Cir.1997).

Statman is next directed to show cause, specifically explaining whether the claims relating to COVID-19 fraud were not asserted vexatiously or wantonly, especially in light of counsel's apparent fundamental misunderstanding of the FCA's public disclosure bar.

### C.      Kentucky Supreme Court Rules

Finally, Kentucky Supreme Court Rule 3.130(3.3) provides, in relevant part, that:

(a) A lawyer shall not knowingly:

    (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer … [or]

    (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

SCR 3.130(3.3)(a).

Statman is directed to explain how: (1) copy-and-pasting arguments directly from another attorney's brief without any citation or credit and (2) asserting that his client is the original source of the *same exact allegations* in *Hoskins*, *Rose,* and this case comports with his duty of candor to this Court.

## VI.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. On or before **Monday, August 25, 2025**, attorney Alan Statman is directed to **SHOW CAUSE** for why he should not be sanctioned, consistent with the Court's analysis above.

2. Defendants Saint Elizabeth Medical Center and Summit Medical Group, Inc.'s motion for judgment on the pleadings [Record No. 18] is **GRANTED**.

Dated: August 18, 2025.

<u>Danny C. Reeves</u>, District Judge
United States District Court
Eastern District of Kentucky